IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| CANAMBO LLC, an Illinois limited liability company doing business as BlueLine Nightclub, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 13-cv-1452 ) |
| CITY OF BLOOMINGTON, et al., | ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendants City of Bloomington, Illinois (City), Robert J. Wall, Pete Avery, Scott Wold, Ty Carlton, Edward Shumaker, and R.T. Finney's Motion to Dismiss (d/e 2) (Motion). The Defendants move to dismiss Counts 1, 2, and 4 of Plaintiff Canambo LLC's (Canambo) four-count Complaint. Notice of Removal (d/e 1), Exhibit 1, Complaint. For the reasons set forth below, this Court recommends that the Motion should be allowed.

## STATEMENT OF FACTS

For purposes of the Motion, the Court assumes that all of the well-pleaded factual allegations are true and draws all inferences in favor of

Canambo. Case v. Milewski, 327 F.3d 564, 565 (7th Cir. 2003). Canambo also submitted an email dated April 8, 2013, as an exhibit to its opposition to the Motion. Plaintiff's Opposition to Defendant's Motion to Dismiss (d/e 4) (Canambo Opposition), Exhibit A, Email dated April 8, 2013. The Court cannot consider this email without converting the Motion into a motion for summary judgment. Fed. R. Civ. P. 12(d). The Court determines that the Motion should not be converted to a summary judgment motion, and so, excludes this email from consideration at this time.

The Complaint alleges that Canambo operated the BlueLine Nightclub ("BlueLine" or "Nightclub") located in the City. Canambo had valid state and City liquor licenses to sell beer, wine, and spirits to its patrons. Canambo paid the City license fee on a quarterly basis. Complaint, ¶¶ 4-6. The City's Liquor Code stated that all City liquor licenses "shall be ineffective at 4:00 p.m. on the 5th workday after last day of the quarter for which license fees were previously paid." Complaint, ¶ 7 (quoting City Liquor Code § 6-6(e)).

The first quarter of 2013 ended on Sunday, March 31, 2013. Pursuant to the City Liquor Code, Canambo's City liquor license was set to expire at 4:00 p.m. on Friday, April 5, 2013. Complaint, ¶ 8. On the

afternoon of Thursday, April 4, 2013, Canambo paid the fee to renew its City liquor license for the second quarter of 2013.  Complaint, ¶¶ 8-9.

On April 4, 2013, at 2:09 p.m., the City's Chief Deputy Clerk Renee Gooderham sent an email (Gooderham Email) to the Mayor; City Manager; City Clerk; and individual Defendants Interim City Police Chief R.T. Finney, Assistant City Police Chief Robert Wall, and City Police Lieutenant Pete Avery.  The Gooderham Email stated that Canambo had renewed its quarterly liquor license for the Nightclub.  A few minutes later, at 2:26 p.m., the Gooderham Email was acknowledged as received by Avery.  Complaint, ¶¶ 10-11.

On April 4, 2013, at 11:31 p.m., Defendants Assistant Chief Wall, City Police Sergeant Edward Shumaker, City Police Officer Scott Wold, and City Police Officer Ty Carlton, along with other unknown officers and agents, entered the Nightclub "on the false advice of dispatch 'that [BlueLine] did not have a valid city liquor license.'"  Complaint, ¶ 12.  The Complaint alleges that Wall knew the dispatch advice was false because he had received the Gooderham Email earlier in the day.  Complaint, ¶ 13.

Defendants Wall, Shumaker, Wold, and Carlton, as well as the unknown officers and agents, "willfully and with intent to harm the business

relationship of BlueLine with its customers" engaged in the following wrongful conduct:

> (a) uttering statements that BlueLine did not have a valid liquor license while in full knowledge that all second quarter liquor licenses had been renewed and BlueLine's first quarter license was not expired until 4:00pm on the following day, April 5, 2013;
>
> (b) ordering that all sales of alcoholic beverages at BlueLine be immediately ceased because BlueLine did not have a license to sell alcohol on the premises on April 4, 2013;
>
> (c) ordering the music be turned off, the lights turned up and all patrons ordered to leave BlueLine because the establishment was being "Closed" for failure to have a license to sell alcohol on the premises on April 4, 2013, and;
>
> (d) imposing a negative police presence at and within BlueLine on April 4 and April 5, 2013.

Complaint, ¶ 14.  Canambo alleges that the City Police Department "does not have the power to 'close down' bars and taverns, and exceeded its authority, power, and violated the law when it 'closed' BlueLine on April 4, 2013."  Complaint, ¶ 16.

On the morning of April 5, 2013, representatives of the City Clerk's office acknowledged that a mistake had been made in wrongfully closing the Nightclub the previous evening.  Despite this acknowledgement, unknown officers and agents of the City again appeared at the Nightclub

the evening of April 5, 2013, and made false statements that the Nightclub did not have a valid liquor license.  Complaint, ¶¶ 15, 17.

Canambo alleges that the Defendants acted knowingly and intentionally in harming its business on April 4 and 5, 2013.  Canambo alleges that as a result of the Defendants' actions, the Nightclub's reputation has been damaged, it has lost customers, and its weekly sales have dropped to less than half of what they were before these events. Complaint, ¶¶ 12, 14, and 18.

Based on these alleged events, Canambo filed a four-count complaint against the Defendants in McLean County, Illinois, Circuit Court.  Count 1 alleged a state law claim for defamation; Count 2 alleged a state law claim for intentional interference with a business expectancy; Count 3 alleged a claim under 42 U.S.C. § 1983 for violation of Canambo's right to equal protection; and Count 4 alleged a § 1983 claim for violation of Canambo's right to due process because the Defendants' actions shock the conscience.  Complaint, Counts 1, 2, 3, and 4.  The Defendants removed the action to this Court based on this Court's federal question removal jurisdiction.  Notice of Removal, ¶¶ 1-11.  The Defendants then filed the Motion.

## ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1). While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests. George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).

The Defendants move to dismiss Counts 1, 2, and 4. The Defendants do not challenge the sufficiency of Count 3. Canambo concedes that Count 1 is barred by § 2-210 of the Illinois Tort Immunity Act. 745 ILCS 10/2-210. Canambo Opposition, ¶ 6. Therefore, the Motion

should be allowed with respect to Count 1.  The only disputes are the sufficiency of Counts 2 and 4.

Count 2

The Defendants move to dismiss Count 2 on the grounds that it is barred by § 2-201 of the Illinois Tort Immunity Act.  745 ILCS 10/2-201.  The Illinois Constitution of 1970 abolished sovereign immunity in Illinois, except as the Illinois General Assembly may provide by law.  Ill. Const. 1970, art. XIII, § 4.  Consequently, the Illinois Tort Immunity Act sets forth the limits of sovereign immunity for municipalities and their officers and employees.  See Harinek v. 161 North Clark Street Ltd Partnership, 181 Ill.2d 335, 340, 692 N.E.2d 1177, 1180 (Ill. 1998).

Section 2-201 of the Illinois Tort Immunity Act states:

> § 2-201. Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201.  The individual Defendants are City employees; they are members of the City Police Department.  Pursuant to § 2-201, they are immune from liability if: (1) their positions involve either the determination of policy or the exercise of discretion; and (2) the alleged wrongful conduct was an act of determining policy in the exercise of discretion.  Harinek, 692

N.E.2d at 1181. The Illinois Supreme Court defines discretionary acts by distinguishing them from ministerial acts:

> [D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.

Snyder v. Curran Tp., 167 Ill. 2d 466, 474, 657 N.E.2d 988, 993 ( Ill. 1995).

The individual Defendants' positions as police officers involve the exercise of discretion. Many activities of police officers are particular to their public office, such as responding to calls, investigating potential illegal activity, and otherwise enforcing the law. Officers use considerable discretion in deciding how to perform these duties to achieve the goals of their office. See e.g., Reese v. May, 955 F.Supp. 869, 875-76 (N.D. Ill. 1996); Oppe v. State of Mo., 171 Ill.App.3d 491, 495, 525 N.E.2d 1189, 1192-93 (Ill. App. 4th Dist. 1988). The individual Defendants meet the first requirement of § 2-201.

The individual Defendants also engaged in an act of determining policy through the use of their discretion when they entered the Nightclub and wrongfully closed it down on April 4, 2013.[1] The Illinois Supreme Court

---

[1] The individual Defendants did not enter the Nightclub on April 5, 2013, and so, the alleged incident on that day is not relevant to the claims against them. Complaint, ¶ 17.

has defined "'policy decisions made by a municipality' as 'those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.'" Harinek, 692 N.E.2d at 1181 (quoting West v. Kirkham, 147 Ill.2d 1, 11, 588 N.E.2d 1104, 1109 (Ill. 1992)).  In this case, the City has policies to regulate the sale and distribution of alcoholic beverages and to license establishments distributing such beverages.  The individual Defendants exercised discretion on April 4, 2013, in deciding how to apply those policies and balance the interests of Canambo, its customers, and the safety of the public at large.  In making that balance, and exercising that discretion, the individual Defendants decided to close down the Nightclub and to state falsely that Canambo did not have a valid liquor license.  The individual Defendants exceeded their authority and abused their discretion. Section 2-201, however, applies to "the exercise of such discretion even though abused."  745 ILCS 10/2-201.

Canambo also alleges that the individual Defendants' intentionally, willfully, and wantonly abused their authority on April 4, 2013 when they closed down the Nightclub.  Section 2-201, however, provides absolute immunity even for intentional, willful, and wanton acts.  In re Chicago Flood Litigation, 176 Ill.2d 179, 195-96, 680 N.E.2d 265, 273 (Ill. 1997).  The

individual Defendants are immune from liability under § 2-201 of the Illinois Tort Immunity Act.

The City is also immune.  The Illinois Tort Immunity Act provides that a municipality is not liable for the actions of an employee unless the employee is liable.  745 ILCS 10/2-109.  Count 2 should be dismissed.[2]

Canambo argues that the individual Defendants were not determining policy when they closed down the Nightclub because the City Police Department "does not have the power to 'close down' bars and taverns, and exceeded its authority, power, and violated the law when it 'closed' BlueLine on April 4, 2013."  Complaint, ¶ 16.  That allegation, if true, may establish an element to establish a prima facie basis for liability.  However, the determination of the existence of a prima facie claim and an immunity defense are separate questions.  Van Meter v. Darien Park District, 207 Ill.2d 359, 369-70, 799 N.E.2d 273, 280 (Ill. 2003).  Sovereign immunity is an affirmative defense that may apply even if the defendants' conduct would otherwise be wrongful.  Id.  The issue for purposes of the immunity defense is whether the individual Defendants were exercising discretion in the determination of policy, not whether the individual Defendants misinterpreted the policies or abused their discretion.  The City

---

[2] Section 10/2-109 also precludes establishing the City's liability based on the conduct of the unknown officers and agents.  Canambo must name these individuals, make them parties, and establish their liability before the City can be held liable for their conduct.

has policies of regulating and licensing the sale of alcohol.  The individual Defendants used their discretion to determine how to apply those policies to this situation.  Section 2-201 applies.  The immunity applies even if the Defendants acted intentionally, willfully and wantonly.  In re Chicago Flood Litigation, 680 N.E.2d at 273.

Canambo relies on the Illinois Appellate Court decision in Harinek to support its argument that the individual Defendants were not determining policy.  Harinek v. City of Chicago, 283 Ill.App.3d 491, 495-96, 670 N.E.2d 869, 872-73 (Ill. App. 1st Dist. 1996).  The Illinois Supreme Court reversed that decision, and in so doing, held that the Appellate Court erred in interpreting whether a public employee's actions constituted a determination of policy.  Harinek, 692 N.E.2d at 1181-82.  Therefore, the Appellate Court decision in Harinek does not provide guidance on the issue.

Canambo also relies on Stratman v. Brent, 291 Ill.App.3d 123, 131, 683 N.E.2d 951, 956-57 (Ill. App. 2$^{d}$ Dist. 1997), to support its claim that the individual Defendants were not determining policy.  The Stratman decision holds that an administrative act common to any enterprise does not constitute a determination of policy.  In Stratman, the plaintiff was a former police officer.  The plaintiff applied for federal law enforcement positions.

The defendant was the police chief of the plaintiff's former employer. The prospective federal employers contacted the police chief for information about the plaintiff's prior employment as a police officer. The plaintiff alleged that the police chief wrongfully made false and disparaging representations about the plaintiff to the prospective federal employers. The <u>Stratman</u> Court held that responding to inquiries about former employees is an administrative task common to any enterprise. Thus, the police chief's actions did not involve the determination of policy. <u>Stratman</u>, 683 N.E.2d at 956-57. Here, the Defendants were deciding how to apply the City liquor licensing laws, which embody public policies. The <u>Stratman</u> decision does not apply. Count 2 should be dismissed because the Defendants are immune.

<u>Count 4</u>

Canambo alleges in Count 4 that the Defendants violated its right to due process because their conduct shocked the conscience. The right to due process prohibits government officials from engaging in arbitrary and oppressive conduct that shocks the conscience. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847-48 (1998). The concept of "shocking the conscience" is a narrow one, "It is one thing to say that officials acted badly, even tortuously, but—and this is the essential point—it is quite

another to say that their actions rise to the level of a constitutional violation." Tun v. Whitticker, 398 F.3d 899, 903 (7th Cir. 2005). The conduct must be intentional, arbitrary, and intended to harm with no relation to any valid governmental purpose, "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849.

In addition, "'[O]nly the most egregious' conduct may be condemned" under this doctrine. Christensen v. County of Boone, Illinois, 483 F.3d 454, 464 (7th Cir. 2007) (quoting Lewis, 523 U.S. at 846.). Thus, the Supreme Court held that police officers' conduct did not shock the conscience even though the officers engaged in a high-speed chase with reckless indifference to the life of the suspect, and the suspect died as a result of their reckless conduct. Lewis, 523 U.S. at 854. The Seventh Circuit held that a sheriff's deputy, Edward Krieger, did not shock the conscience even though he intentionally harassed, annoyed, and intimidated fellow deputy Robert Alty and Alty's girlfriend, and even though Krieger harassed the couple specifically to interfere with their constitutional right to intimate association. Christensen, 483 F.3d at 464. The Seventh Circuit noted that, "Watching people from a squad car is very far indeed from "the most

egregious" conduct in which a deputy sheriff can engage.  Deputy Krieger did not invade their bedroom or commit mayhem."  Christensen, 483 F.3d at 464.  The Seventh Circuit then explained,

> *Lewis* calls for judicial modesty in implementing a federal program of constitutional torts that lie outside any specific clause of the Constitution. A modest role means leaving to ordinary tort litigation conduct of the sort in which Deputy Krieger is alleged to have engaged.

Id. at 464-65.  Thus, the "shocks the conscience" principle applies only to the most extreme conduct.

In light of these precedents, the Defendants' alleged wrongful conduct did not constitutionally shock the conscience.  The individual Defendants walked into the Nightclub, made false and disparaging statements, and wrongfully closed the establishment.  This conduct, "is very far indeed from 'the most egregious' conduct in which a [law enforcement officer] can engage."  Christensen, 483 F.3d at 464.  The Defendants did not, for example, enter the Nightclub with guns drawn and destroy cases of liquor and kegs of beer.  The Defendants' conduct did not rise to the "conscience shocking" level necessary to constitute a constitutional tort for a violation of the right to due process.  The Defendants' conduct should be left to ordinary tort litigation.  Count 4 fails to state a § 1983 claim against the individual Defendants.

Count 4 also fails to state a claim against the City.  A municipality cannot be liable under § 1983 if its officials and employees did not violate an individuals' constitutional rights.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Count 4 should also be dismissed.

WHEREFORE, the Defendants' Motion to Dismiss (d/e 2) should be ALLOWED.  Counts 1, 2, and 4 should be dismissed.  Defendants should be directed to answer Count 3 by a date certain.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.

ENTER:   November 5, 2013

*s/ Byron G. Cudmore*
UNITED STATES MAGISTRATE JUDGE